UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Paula R. Ramsey,

        Debtor.

_____/

Case No. 10-55255
Chapter 13
Hon. Walter Shapero

## OPINION REGARDING APPLICABLE COMMITMENT PERIOD

The matter before the Court is the Trustee's Objection to Confirmation. The Trustee argues that the Debtor's deductions on Line 3b of Form 22C are improper under 11 U.S.C. § 1325(b)(2)(B), and that Debtor is not entitled to confirmation of a plan that runs less than 60 months pursuant to 11 U.S.C. § 1325(b)(4).

### I. BACKGROUND

Paula Ramsey ("Debtor") filed her Chapter 13 petition on May 7, 2010. Debtor is an attorney and the sole owner of the Law Office of Paula R. Ramsey PLLC ("Law Office). Debtor's sole source of personal income is the monthly net income of the Law Office.

On May 7, 2010, Debtor filed a proposed Chapter 13 plan proposing a three year duration, her "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income" ("Form 22C"), and her remaining Schedules.

On Part I, Section 3 of her Form 22C, entitled "Calculation of § 1325(b)(4) Commitment Period," Debtor listed average monthly gross receipts of the Law Office in the amount of $5,212.92 and deducted the Law Office's average monthly business expenses in the amount of $2,971.33, calculating the Law Office's average monthly net income to be $2,241.59. Line 15 of Debtor's Form 22C lists an annualized current monthly income of $26,899.08, which is less than the applicable median family income

for the State of Michigan ($43,456.00 for a household of one). Based on this calculation, Debtor's proposed a 36-month plan with a 1% dividend to unsecured creditors.

Debtor filed a First Amended Chapter 13 plan on May 27, 2010 and filed a Second Amended Chapter 13 Plan on June 7, 2010, both proposing 36-month plans. On July 2, 2010, the Trustee filed an Objection to Confirmation of Debtor's plan, specifically objecting to the Debtor's deduction of business expenses on Line 3b of Form 22C as being contrary to 11 U.S.C. § 1325(b)(2)(B) and asserting that a 60-month plan length is required. The Trustee contends that Form 22C is inconsistent with the Bankruptcy Code in that the business expense deduction of Line 3(b) should not be made to determine a debtor's "current monthly income," but rather that the business expenses should be deducted with the Debtor's other expenses in calculating her "projected disposable income." The Trustee argues that a 60-month plan would yield $9,458, which would equal a 4% dividend to unsecured creditors.

At an adjourned confirmation hearing held on August 25, 2010, the Court heard oral argument regarding the issue of the business expense deduction on Form 22C. On September 9, 2010, Debtor filed an Amended Form 22C, listing "income from PLLC" in the amount of $2,241.59 on Line 9, which accounts for "[i]ncome from all other sources," and eliminating any reference to the business income on Line 3. The Trustee argues that this amendment does not impact the underlying matter at issue in the Trustee's Objection.

Despite this outstanding issue, the Debtor's plan was confirmed by consent on December 15, 2010. The Order Confirming Plan provided: "Debtor's plan shall be extended to 60 months at the time of confirmation. Contingent on the court ruling in favor of the debtor with respect to trustee objection #1 the plan shall be reduced back to a 36 month plan by stipulation between the debtor and the trustee."

## II. DISCUSSION

The issue before the Court is whether, when calculating the applicable commitment period, a chapter 13 debtor's business expenses may be deducted when calculating "current monthly income," as indicated on Form 22C[1], or whether they must

---

[1] Part I of Form 22C requires a debtor to calculate his or her current monthly income by subtracting business expenses from gross receipts. The Trustee argues that this section of Form 22C is inconsistent with the Code, specifically § 1325(b)(2).

be deducted from current monthly income to calculate the debtor's "projected disposable income."

11 U.S.C. § 101(10A) defines "current monthly income" as "the average monthly income from all sources that the debtor receives … without regard to whether such income is taxable income, derived during the 6-month period [before bankruptcy]." 11 U.S.C. §1325(b)(2) defines disposable income:

> For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and . . . (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

Most of the courts that have decided this issue have found that Form 22C is inconsistent with the Code. The Trustee relies on *Wiegand*, *Arnold*, *Bembenek*, and *Sharp* and asserts that Form 22C is inconsistent with the Code to the extent that it provides for a deduction of business expenses when calculating "current monthly income." The Debtor relies on *Geiger* and asserts that, since she only "receives" the net income of her law office as her own personal income and she does not "receive" the gross receipts of the law firm, the law firm's net income (after deducting ordinary and necessary business expenses) is the appropriate figure to be used in calculating "current monthly income."

In *In re Wiegand*, 386 B.R. 238 (9th Cir. BAP 2008), the 9th Circuit Bankruptcy Appellate Panel ("BAP") found that Form 22C was directly at odds with § 1325(b)(2)(B) and held that debtors must follow the Code, not Form 22C. In that case, the debtors were a trucker and his spouse. The debtors' Form 22C listed gross receipts from his trucking business of $6,192 and a deduction of ordinary and necessary business expenses of $5,175, reflecting a net monthly business income of $1,382. Based on that calculation, the debtors were determined to be below-median income debtors and they determined that the three-year applicable commitment period applied. They then filed a 36-month plan that proposed monthly payments of $298. The trustee objected to confirmation of their plan on the grounds that the debtors incorrectly calculated their current monthly

income. The bankruptcy court overruled the objections and the BAP reversed. The BAP found that § 1325(b)(2) was "plain and unambiguous" and it ultimately held that "the specificity of § 1325(b)(2)(B) controls – business deductions are to be taken from a debtor's current monthly income to arrive at the debtor's disposable income." *Id*. at 242. The BAP stated that "[i]f business expenses are deducted from gross receipts to determine a chapter 13 debtor's current monthly income, then there would be no need for § 1325(b)(2)(B), which provides for the same deductions." *Id*. The BAP also noted that using net business income to determine a debtor's currently monthly income might result in chapter 13 debtors using the deductions twice: once in calculating their current monthly income, and again in calculating their disposable income.[2]

Other courts considering this issue have come to the same conclusion. *See In re Arnold*, 376 B.R. 652 (Bankr. M.D. Tenn. 2007) (holding that "[o]fficial Form 22C, Part I, Line 3, which permits the deduction of business expenses to determine 'current income' is simply wrong"); *In re Bembenek*, 2008 WL 2704289; *In re Sharp*, 394 B.R. 207 (Bankr. C.D. Ill. 2008) (holding that "in calculating current monthly income, a self-employed debtor must use gross business income and may not deduct business expenses in the calculation).

The only case cited by the Debtor was *In re Geiger*, 2010 WL 2756760 (Bankr. N.D. Ohio 2010). In that case, the debtor was the sole shareholder of a trucking company that was organized under Ohio law as an S corporation. The debtor in that case filed corporate tax returns for the S corporation, but followed virtually no other corporate formalities. In calculating his current monthly income in that case, the debtor took the average of the corporation's gross receipts for the six months prior to filing and deducted business expenses, reflecting a net monthly income of $3,883. Based on that calculation, the debtor was considered to be a below-median income debtor and he determined that the three-year applicable commitment period applied. The trustee objected, arguing that the debtor was required to commit to a 60-month plan. The court, focusing on the definition of current monthly income as being "the average monthly income from all sources that the debtor *receives*" (emphasis added), stated that "there is a strong textual

---

[2] Official Form 22C addresses this problem by instructing debtors not to deduct any business expenses that they have already deducted to calculate business income on Line 3 of the form.

argument that the gross receipts are not income to debtor because he does not receive them because the income belongs to Corporation. Debtor 'receives' only the net income or profit, the flow-through from the S Corporation." *Id*. at 9. The court distinguished the facts in that case from those in *Weigand*, noting that unlike *Weigand*, the debtor was operating his business through a corporate form that remained intact and the debtor's only income was the flow-through of the net income from the S corporation. That court ultimately found "no error in [d]ebtor's use of the flow-through income from [the] Corporation, and not gross receipts, on the means test."

In this case, the Court agrees with the approach taken in the *Geiger* case. In this case, there have not been asserted or proven facts which indicate that Debtor's law firm is not a separate corporate entity. It follows that what is available for her to receive is the net income of the law firm. The term "receives" is not defined in the Bankruptcy Code, but it is commonly defined as: "to come into possession of." To hold that the Debtor in this case received, or came into possession of, all of the gross income from her law firm, which is a separate entity and remained intact, does not make any more sense than it would to hold so if the entity involved was a manufacturer engaged in a business other than a personal services business, absent facts requiring one to ignore the entity's separateness. The operating costs and expenses of the law firm must be paid, and thus the gross receipts of the law firm cannot be considered to be available to her. Debtor only "received" the net income of the law firm, or at least that is what is realistically available for her to receive, thus, the business's expenses were properly deducted when determining Debtor's current monthly income.

Supporting this decision is the fact that the Census Bureau uses net, rather than gross, income in computing median family incomes. Under 11 U.S.C. § 1325(b), those are the figures to which a debtor's annualized current monthly income is compared; therefore, it makes sense to calculate "current monthly income" in this same way. Also, plain meaning interpretation of § 1325(b)(3) and § 707(b)(2)(A) and (B) would result in a self-employed, above-median-income debtor never being able to deduct most business expenses. Section 1325(b)(3) requires an above-median-income debtor to determine "amounts reasonably necessary to be expended" according to "subparagraphs (A) and (B) of section 707(b)(2)." Those paragraphs of the means test require that "[t]he debtor's

monthly expenses [ ] be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides. . . ." All of the relevant IRS standards and categories relate to personal and household expenses, not business expenses (which are included in another section of the IRS Financial Analysis Handbook). Likewise, all of the "Other Necessary Expenses" expressly allowed to be deducted under § 707(b)(2)(A) and (B) are personal and household expenses, not business expenses. Thus, the only sensible interpretation is that a self-employed debtor's income is net, not gross, income.

This Court understands that using net business income to determine a debtor's current monthly income creates a redundancy with § 1325(b)(2)(B), which instructs a debtor to subtract business expenses from current monthly income to calculate the debtor's disposable income.[3] As noted, this problem for above-median-income debtors was corrected in Form 22C because the form instructs debtors not to deduct those expenses a second time. Furthermore, if a debtor attempts to take such a "double deduction," the Chapter 13 Trustee would able to raise the proper objection to such.

### III. CONCLUSION

For the foregoing reasons, Trustee's Objection to Confirmation of Debtor's Plan is denied. Debtor's Plan is thus entitled to be a 36-month plan. Debtor shall prepare and present an appropriate order.

.

**Signed on October 04, 2011**

                               **/s/ Walter Shapero**
                         **Walter Shapero**
                         **United States Bankruptcy Judge**

---

[3] Section 1325(b)(2)(B) existed prior to the changes introduced by BAPCPA and was likely overlooked by Congress when it introduced the means test and the concept of "current monthly income."